Davis, Judge,
delivered the opinion of the court:
During World War I, plaintiff served as a second lieutenant in the Infantry Officers Reserve Corps from November 27, 1917, until he was honorably discharged on July 6, 1920. He did not thereafter have any creditable federal service. Since July 1928, he has been on the World War I Emergency Officers’ Retired List by reason of physical disability, and has received disability retirement pay at the rate of 75 percent of the active duty pay of a second lieutenant with over two years of service. In this action he claims en *223 titlement to such retired pay computed on the basis of an additional three years’ service which, he says, he had in the Kentucky National Guard from March 1907 to March 1910. He asserts that such an additional period would raise his retired pay because it would give him a total of more than five years of creditable service.
This claim was rejected, in 1952, by the Adjutant General of the Army on the ground that no record of such 1907-1910 National Guard service could be found. In 1959 the Army Board for Correction of Military Records also denied the claim for lack of proof. This suit was then begun on August 16, 1961. The defendant’s motion to dismiss the petition was denied, in November 1963, in a per euriam opinion, 163 Ct. Cl. 259, which held that (a) the proceedings before the Correction Board were immaterial to the resolution of plaintiff’s conventional cause of action for military pay; (b) the plaintiff should have an opportunity to prove his case at a court trial, independently of the Board proceedings; and (c) this is a “continuing claim” on which the plaintiff would be entitled, if he succeeded, to a judgment running back no more than sis years from the filing of his petition. The case was returned to the trial commissioner.
After a trial, the commissioner reported the evidence, pro and con, on the controverted issue of plaintiff’s National Guard service, and concluded that “plaintiff has not produced dear and convincing evidence that he served in the Kentucky National Guard from March 1907 to March 1910.” Plaintiff objects to this result, arguing that he is entitled to prevail on the preponderance of the evidence found by the commissioner and now before the court. Defendant maintains that the commissioner’s conclusion is correct.
Before reaching this factual dispute, we must consider whether, even if plaintiff is right on the facts, there is a statutory foundation for increasing his retirement pay. Rather late in the day but nevertheless in time, the defendant contends that there is no legislative basis for taking account, in computing the disability retirement pay of a World War I ex-serviceman in plaintiff’s position, of pre-World War I National Guard service (other than service under federal *224 auspices) so as to raise Ms retired pay. We first consider that threshold question.[1]
Plaintiff, as a World War I nonregular Army officer, became entitled, for the first time, to disability retired pay under Section 1 of the Act of May 24,1928, 45 Stat. 735, giving such compensation to World War I emergency officers who incurred physical disability in line of duty during their service and were rated at not less than 30 percent permanently disabled. See Tall v. United States, 79 Ct. Cl. 251 (1934); Perkins v. United States, 116 Ct. Cl. 778 (1950); Broche v. United States, 157 Ct. Cl. 784, 303 F. 2d 939 (1962). The Pay Readjustment Act of 1942, 56 Stat. 359 — generally raising the pay of Army officers, including those previously retired — was construed as inapplicable to officers on the World War I Emergency Officers’ Retired List (see Perkins v. United States, supra, 116 Ct. Cl. at 787-88). But Section 6 of the Act of June 29,1946, 60 Stat. 343,345, modified the 1942 Act to give persons like plaintiff the right to have their retirement pay computed on the new and higher rates. Id. at 788. There was, however, no “change in the type or class of service which may be counted in computing retirement pay * * Id. at 788-89. For plaintiff, credit could only be given for his years of active service during World War I since that was all he was entitled to count at the time of his discharge in July 1920. See Act of June 4, 1920, 41 Stat. 759, 785; 1 Comp. Gen. 75 (1921); of. 4 Comp. Gen. 660 *225 (1925).[2] The Act of May 24,1928, supra, granted “retired pay at the rate' of 75 per centum of the pay to which” the officer was “entitled at the time of * * * discharge * * *” (emphasis added) .[3]
Plaintiff’s major position is that Section 402 (i) of the Career Compensation Act of 1949,68 Stat. 802,820,87 U.S.C. § 272(i) (1952 Ed.) (now 10 U.S.C. § 1215), gave him the right, from the effective date of that statute (October 1, 1949), to credit the three years of (alleged) pre-World War I Kentucky National Guard enlisted service in the computation of the retired pay originally granted him by the 1928 Act. Section 402(i) declares:
All members of the reserve components heretofore or hereafter retired or granted retirement pay because of physical disability shall be entitled to the same pay, rights, benefits and privileges provided by law or regulation for retired members of the regular services.
This provision, plaintiff asserts, accords him the same retired pay as an officer of the Begular Army similarly situated. Such an officer, the argument continues, is entitled to credit, for disability retirement pay purposes under the Pay Eeadjustment Act of 1942 (as amended), any National Guard enlisted service he had at the time of retirement. Defendant does not deny that Section 402 (i) applies to plaintiff, but disagrees that a regular officer similarly situated would have this right.
We think that plaintiff is correct — that a regular World War I officer, with prior enlisted service in the National *226 Guard, wbo was retired for disability in 1920 (and not thereafter recalled) would be entitled (for some years prior to October 1,1949, and thereafter) to count Ms enlisted service, if necessary, in the computation of his retired pay. The chain-of-reasoning, as in so many military pay cases, is somewhat long and complex, but the links seem strong.
At the beginning of tMs country’s participation in World War II, Section 1 of the Pay Readjustment Act of 1942, 56 Stat. 359, gave higher permanent pay rates to regular officers. The eleventh paragraph of section 1, as amended by the Act of December 2,1942,56 Stat. 1037, provided that “in computing the service for all pay purposes of officers paid under the provisions of this section” — including lieutenants in the Regular Army — “such officers shall be credited with full time for all periods during which they have held commissions as officers” (emphasis added) of the National Guard and National Guard Reserve (among other entities). Section 3A of the Pay Readjustment Act (also as added by the Act of December 2, 1942, supra) gave similar credit for enlisted National Guard service, but only “during the existence of any war declared by Congress and for six months immediately following the termination of such war.” Both of these provisions were directed to active duty base pay, but the question arose whether they had any effect on the future retired pay of officers already retired before the effective date of the Pay Readjustment Act (June 1, 1942). TMs issue was stirred by Section 15 of the Readjustment Act, 56 Stat. 367, which provided in its first paragraph:
On and after the effective date of this Act, retired officers, warrant officers, nurses, enlisted men, and members of the Fleet Reserve and Fleet Marine Corps Reserve shall have their retired pay, retainer pay, or equivalent pay, computed as noto authorized by law on the basis of pay provided in this Act, which pay shall include increases for all active duty performed since retirement or transfer to the Fleet Reserve or Fleet Marine Corps Reserve in the computation of their longevity pay and pay periods * * * (emphasis added).
In 1943, the Comptroller General ruled that “the effect of Section 15 of the said Pay Readjustment Act of 1942 is to give an officer retired prior to its effective date, June 1, *227 1942, tlie same retired pay as an officer of the same rank and length of service retired subsequent to such effective date”; accordingly, such a retired regular officer “may count for pay purposes in the computation of his retired pay said service which he had at the time of his retirement as is authorized to be counted by Section 1 of the Pay Eeadjustment Act of 1942, 56 Stat. 359, as amended, since the pay increases resulting from the provisions of such section are permanent in nature * * *.” 23 Comp. Gen. 59,61-62. At the same time, the Comptroller General ruled that the pay increases granted by Section 3A of the 1942 Act could not be so counted because they were temporary, not permanent, and “it has long been established that exceptional pay or temporary increases in pay given for special services or under special circumstances incident to actual service, such as a temporary increase in active duty pay in time of war, do not enter into the computation of retired pay.” Id. This decision meant that a Eegular Army officer, retired in 1920 (i.e., before June 1, 1942) for physical disability, could take account of his commissioned National Guard service in computing his future retired pay, but could not credit his enlisted National Guard service.
If this legislation had remained unchanged, plaintiff would not have been aided since his claimed service in the Kentucky National Guard was as an enlisted man. But Congress, in 1944, made permanent the provisions of Section 3A of the 1942 Act (relating to enlisted National Guard duty) which had initially been temporary, for the duration of World War II only. Act of September 7, 1944, 58 Stat. 729. Upon their becoming part of the permanent pay structure, the Comptroller General ruled that these provisions applied in computing the retired pay of officers (and others) retired prior to June 1, 1942. 26 Comp. Gen. 56, 58 (1946); 26 Comp. Gen. 152, 155-56 (1946). Accordingly, enlisted National Guard service could be counted in calculating retired pay, at least that due from and after September 1944. A World War I officer of the Eegular Army, in plaintiff’s shoes, would get credit for pre-World War I enlisted duty in the National Guard.
*228 We are given no reason to depart from the Comptroller General’s contemporaneous interpretation of this military pay legislation of 1942 and 1944. That construction, which seems to us consistent with the wording and pattern of the statutes, has doubtless been followed by the armed services for the past twenty years. We follow it now and hold that, if plaintiff had the three years of enlisted National Guard service he claims, he is entitled under Section 402(i) of the Career Compensation Act, supra, to have that period counted in making up his retired pay.
On the factual issue, we disagree with the trial commissioner who, we’think, placed too heavy a burden of proof on the plaintiff. It was not necessary for him to produce “clear and convincing evidence” of his National Guard service. That standard is applicable to certain special issues like fraud, but it does not govern the ordinary issues of fact in a pay case, such as this. The correct standard is the normal one of the preponderance of the evidence. Though the issue is close, we have concluded that plaintiff prevails under that measure.
There appears to be no contemporaneous record of plaintiff’s three-year hitch from March 1907 to March 1910, but in his favor are a considerable number of items of proof.[4] In a letter of April 1917, asking for help in obtaining a commission, he wrote that he had had three years of training in the state militia; in an Army form, filled out in November 1917, he stated that he had been “Pvt. Co. C, 3d Kentucky Inf., Mar.-, 1906, to Apr. X, 1908”; in April 1920, applying for a Eegular Army appointment, he listed “KY. National Guard 2 Years 1900-1908. Honorably Discharged,” as part of his prior service. There are affidavits by plaintiff and two Kentucky companions swearing that plaintiff served in the Kentucky National Guard during most *229 or all of the pertinent years; one of the affiants is known to have so served himself and he declares that plaintiff served along with him. It is admitted that plaintiff went to a Kentucky National Guard camp in July 1907; commonly, no person would have had that privilege in Kentucky, at that time, if he were not a member of the National Guard; and the normal enlistment during that period was at least three years and may well have been five.[5] It may be, too, that the name “John Morris”, which does appear on one contemporaneous roll of the Kentucky National Guard, represents this plaintiff; he swears that he was the only Morris in the company and the officers may have been confused by his nickname of “Long John.” In addition, it seems that certain- of the records were destroyed by fire in 1933 and it could well be that papers showing plaintiff’s service were among those lost.
There are, of course, several factors favoring the defendant, but on balance we find that plaintiff has borne his ordinary burden of proving by a preponderance of the evidence that he served as an enlisted man in the Kentucky National Guard for three years from March 1907 to March 1910. He can therefore have his retired pay recomputed on the basis of that additional service. As held in our earlier decision of November 15,1983, his recovery is restricted by the statute of limitations to the pay due during a period no more than six years from the date of the filing of his petition in this court on August 16,1961.
The plaintiff is entitled to recover and judgment is entered to that effect. The amount of recovery will be determined under Rule 47 (c).
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Richard Arens, and the briefs and argument of counsel, makes findings of fact as follows:
il. (a) Plaintiff, who was born on November 3, 1889, is a *230 citizen of the United States. His post office address is Foxworth, Mississippi.
(b) Since 1928 he has been receiving disability retired pay at the rate of 75 percent of the active duty pay of a second lieutenant (in the Army) with over two years’ service.
(c) In this suit, he claims entitlement to such pay computed on the basis of an additional three years’ service which he alleges he had in the Kentucky National Guard from March 1907 to March 1910.
2. On November 15, 1963, the court, per curiam, denied defendant’s motion to dismiss the petition. In its opinion, the court stated that plaintiff must be given the opportunity to prove the factual basis of his claim independently of the proceedings which took place before the Army Board for the Correction of Military Records. The court further stated: “He [plaintiff] does not move for summary judgment and the materials he offered to the Board would not warrant such a decision in his favor at this stage.” The case was accordingly returned to the trial commissioner.
3. On February 20, 1964, a trial was conducted in Washington, D.C., on the issue of liability, with the amount of recovery, if any, reserved for further proceedings. No oral testimony was adduced. The evidence consisted exclusively of the Board record, exhibits considered by the Board, and other exhibits.
4. From July 9, 1907, to July 18, 1907, plaintiff served on active duty at summer encampment with Company C, 3rd Infantry, Kentucky National Guard, and was paid for such service from Federal funds.
5. A letter, dated April 6,1917, addressed to a then United States Senator from Kentucky from plaintiff, reads in part:[1]
Sir: I have had three years training in the state malitia [sic], also two years at Ky. State College. I would like for you to present my name to the War Dept, for a commission in the U.S. Army. * * *
*231 Institution, study, or work
In what year or years
Years and months
Owensboro College, Owensboro, Ky-University of Ky., Lexington, Ky_ 1903-04-05.. 1906.. 3yrs. 1 yr.
6.On July 9,1917, plaintiff filled out and signed a physical examination form which, as filled out, reads in part:
7. (a) On November 27,1917, plaintiff, then at Fort Benjamin Harrison, Indiana, filled out and signed a form for the Adjutant General’s Office of the War Department, one item of which called for “Prior military service (at United States Military or Naval Academy, enlisted man or officer in United States Army or Navy, Kegular or Volunteer. Give dates, rank, company, regiment, etc.).” In response to the item, plaintiff filled in the following: “Pvt. Co. C, 3d Kentucky Inf., Mar. —, 1906, to Apr. X, 1908.”
(b) On the same date, plaintiff accepted appointment and entered on active duty as second lieutenant, Infantry Officers Keserve Corps. He continued to serve on such active duty without interruption until he was honorably discharged on July 6,1920.
8. On or about April 19, 1920, plaintiff filled out and signed at Camp Jessup, Georgia, an application form for appointment in the Kegular Army.
Item 15 of the form read:
15. State your service in any of the following, giving length of service, grades (enlisted or commissioned), dates and organizations, and character of separation: (Kegular Army, United States Army, U.S. Military Academy, Navy, U.S. Naval Academy, Marine Corps, National Guard, Officers’ Keserve Corps)
In response thereto, plaintiff filled in the following:
KY. National Guard 2 Years 1906-1908. Honorably Discharged._
2nd Officers Training Camp, Fort Benj. Harrison, Ind. Aug. 27-Nov. 27, 1917._
2nd Lt. Inf. 335th Inf. Camp Zachary Taylor, Ky. Nov. 1917-May 1918.__
2nd Lt. Inf. 3rd Replacement Regiment, Camp Gordon, Ga. May-July 1918.
*232 2nd Lt. Inf. 4tb Group M.G.T.C. Camp Hancock, Ga. July-Dee. 1918._
2nd Lt. Inf. Development Group, Camp Hancock, Ga. Dec. 1918-March 1919._
2nd Lt. Inf. Attacked to M.T.C. Camp Hancock, Ga. March 14,1919._
2nd Lt. Inf. (M.T.C.) Camp Jesup, Ga. April 1919-April 1920._
Examined and passed the examination for Provisional 2nd Lt. Inf. at Fort Benj. Harrison, Ind. Nov. 15, 1917.
i9. On February 1, 1921, plaintiff filled out and signed a form of the Federal Board for Vocational Education, Division of Behabilitation in which he certified that he had 2 years of college at State University, Lexington, Kentucky and that his age on leaving school was 19 years.
10. On July 2, 1928, plaintiff was placed on the Emergency Officers’ Retired List by reason of physical disability and, since that time, has received disability retirement pay computed at the rate of 75 percent of the active duty pay of a second lieutenant with over 2 years’ service.
11. (a) On December 21, 1950, the Adjutant General of the Department of the Army made request of the Adjutant General of Kentucky for verification of plaintiff’s service in the Kentucky National Guard. The request included the following: “Our records indicate-above named officer had enlisted service as a private in Company ‘C’, 3rd Kentucky National Guard from 1906 to 1908.”
(b) On February 27, 1951, in response to the above request, the Assistant Adjutant General and Director of Armories of the Military Department of Kentucky advised the Adjutant General of the Department of the Army as follows: ■
We have made a thorough search of our Company C, 3rd Kentucky Infantry records and regret to. inform you that we have no record for the subject person.
12. (a) On October 31, 1951, the Adjutant General of the Department of the Army made request of the Adjutant General of Kentucky for further search of the records for evidence of service by plaintiff as a private with Company C, *233 3rd Infantry in the Kentucky National Guard; This request was accompanied by an affidavit of plaintiff, dated October 15,1951, reading:
# * * ‡ ’ ❖
1. That he, the affiant, enlisted in the Kentucky State Guard at Owensboro, Kentucky, on or about January 1, 1906, and was discharged on or about December 31,1908.
2. That all papers concerning the above enlistment period have been lost by the affiant. That his enlistment period was the same as that of Irl Schenk, a neighbor, and that the home address of both the affiant and Irl Schenk was Thurston, Kentucky. That the affiant attended the encampment at Jamestown, Virginia, about June 1907. That his company commander was William Gates, brother of one George Gates who is now in the Bailway Mail Service.
8. Affiant makes the foregoing statements of his own knowledge and belief.
* * * * *
(b) On November 21, 1951, in response to the above request, the Adjutant General of Kentucky advised the Adjutant General of the Department of the Army:
lit «fc . 3jí
1. We have again made a check of. our files and still find no record for the subject man.
2. Muster Boll of 31 October 1905 to 30 April 1906 and Muster Boll of 1 April to 30 September 1908 do not carry the name of the subject man. Muster Boll of 1 April to 30 September 1908 does, hownver, ■ carry the name of Irl Schenk.
13. (a) The body of a letter, dated February 7, 1952, addressed to the Office of the Adjutant General of the Department of the Army from the chief of the Becords Information Section of the General Accounting Office reads:
Beference is made to your letter of November 28, 1951, requesting information relative to the-dates for which Harold B. Morris was paid while attending the encampments as á member of the Kentucky National Guard.
An examination of pertinent recorded, payrolls of the Kentucky National Guard during the period Jan *234 uary 1,1906, tó December 31,1908, reveals that Harold E. Morris was carried on payrolls as follows:
Period Organization Remarks
7/9/07 to 7/18/07_ Co. “C,” 3rd Infantry, Paid.
KNG.
(b) On February 21, 1952, the Adjutant General of the Department of the Army transmitted to the Adjutant General of Kentucky a copy of the foregoing letter dated February 7, 1952, and made request that a further search be made to determine plaintiff’s total service with the Kentucky National Guard.
(c) On April 4,1952, in response to the above request, the Adjutant General of the Military Department of Kentucky advised the Adjutant General of the Department of the Army:
1. We have again made a check of Company C 3rd Eegiment and regret that we cannot find a record for this man.
2. This office has no Payrolls prior to 1929, since records prior to 1929 were destroyed by fire. The National Guard Bureau may have a record of this man’s service.
14. (a) The record of the Army Board for Correction of Military Eecords which was received in evidence at the trial contains an affidavit, dated December 30,1953, of Carl Schenk which reads:
$ * $ $ *
1. That he is a brother of one Irl Schenk who was a member of Company C, 3rd Ky. Inf. during the years 1907, 1908, and 1909. That one Harold E. Morris, a neighbor and personal acquaintance, served in the same organization with Irl Schenk, and at the same time. That the enlistment was in Owensboro, Kentucky.
2. Affiant makes the foregoing statements of his own knowledge and belief.
*****
(b) The foregoing record also contains an affidavit dated January 6,1954, of Irl Schenk which reads:
$ $ ‡ ‡ $
1. That he enlisted in Co. C, 3rd Ky. Inf. at Owens-boro, Kentucky, on or about March 8, 1907, and was discharged on or about March 7,1910.
*235 2. That Harold R. Morris, a neighbor and acquaintance, enlisted in the above organization at the same time and served with him in said organization.
3. Affiant makes the foregoing statements of his own knowledge and belief.
*****
15. The body of a letter, dated August 3, 1954, addressed to the Department of the Army, Office of the Adjutant General from the chief of the Office Services Division of the Veterans Administration reads:
This is in reply to your letter dated June 1,1954 requesting National Guard report in the case of Harold Roscoe Morris.
A thorough search in this Administration reveals no record of any National Guard service for the above-named veteran.
16. The record of the Army Board for Correction of Military Records which was received in evidence at the trial contains an affidavit of plaintiff, dated August 23, 1956, which reads in part:
‡ ‡ ‡ ‡ $
“I enlisted in Company C, 3rd Kentucky Infantry, Owensboro, Kentucky, on or about March 8, 1907, and was discharged on or about March 7,1910.
“I enlisted with a neighbor and boyhood friend, Irl Schenk, at the same time, and we served the three years enlistment together.
“I employed Ben B. Fowler, Attorney-at-Law, Frankfort, Kentucky, to check the records of the Adjutant General of the Kentucky office. Most of the records prior to 1929 were destroyed by fire. The said Fowler found two muster rolls, one covering the period _ of June 20, 1907, to January 20, 1908, the other covering the period of April 1, 1908, to September 30, 1908. There was no muster roll covering the periods of May 1, 1906, to June 19, 1907, and January 21, 1908, to March 31,1908. This means that there are several muster rolls which should have been taken during that period, which are not available for reasons unknown to me.
“Previously, I filed with Adjutant General of Kentucky a statement wherein he estimated the time of enlistment as January 1, 1906, and enlistment expiration date as of December 31,1908. Since Mr. Fowler checked the records, my memory has been refreshed. I was in *236 duced to join. Company C because of an ensuing summer encampment to be held at Jamestown, Virginia, in July 1907.
“The records of the General Accounting Office, Washington, D.C., showed that I was carried' on the payroll as a member of Company C, 3rd Kentucky Infantry from July 9th to July 18,1907. A letter from the Adjutant General of the Army stating these facts is being attached to this affidavit by affiant.
“I have been informed that the name of one John Morris appears on the muster roll of Company C, 3rd Kentucky Infantry for the period of June 20, 1907, to January 20,1908. There was no person by the name of John Morris belonging to said Company during my enlistment, nor was the name John Morris or any Morris family in Daviess County at that time, other than my own immediate family. Since I was the only Morris in said Companjr, the officers must have confused my first name and such an error occurred most likely since I was known at that time by the nickname of Long John.
“I was a member of said Company until March, 1910. I did not re-enlist because I left Owensboro on or about April 1, 1910, to work for the Tri-Bullion Smelting Company, Kelly, New Mexico.”
**** *
17. (a) On March 6, 1958, the Senate of the Commonwealth of Kentucky passed Senate Eesolution No. 55 which reads:
a RESOLUTION authorizing the Adjutant General of Kentucky to certify the service of Harold E. Morris in the 3rd Infantry of the Kentucky National Guard.
whereas, it appears by affidavits of Irl Schenk and Carl Schenk that Harold E. Morris served in Company C, 3rd Infantry Kentucky National Guard from on or about March 8,1907, to March 7,1910;
whereas, it further appears from correspondence from the Adjutant General of the Army of the United States, by order of the Secretary of the Army, that the records of the General Accounting Office show that Harold E. Morris was carried on payrolls of Company C, 3rd Infantry, Kentucky National Guard, from July 9 to July 18, 1907; that he was credited with three years active service; and
whereas, it further appears by affidavit of Harold E. Morris that he caused to be made numerous searches of the records of the office of the Adjutant General of *237 Kentucky, both by employes of the office and by privately employed counsel; that no record was found of his service, but that one John Morris was found to have been on the muster rolls, indicating that his possible enlistment date was March 8, 1907, and that Harold E. Morris was known by the nickname of “Long John” Morris;
NOW, THEREFORE,
Be it Eesolved by the Senate of the Commonwealth of Kentucky:
That the Adjutant General of Kentucky is authorized and directed to certify the service of Harold E. Morris in Company C, 3rd Infantry, Kentucky National Guard, from March 8,1907, to March 7,1910.
attest:
(s) Mary Purdy assistant clerk of the senate
(b) On March 18, 1958, the Adjutant General of Kentucky issued the following Certificate of Service:
CERTIFICATE OF SERVICE
Pursuant to Senate Eesolution No. 55, introduced 21 February 1958 and passed by the Senate of the Commonwealth of Kentucky, 6 March 1958, being directed by said Eesolution. to certify to the service theretofore in question of Harold E. Morris on the basis of affidavits now made of official record, I hereby do certify, that, according to such official affidavits now of record in the Department of Military Affairs, Harold E. Morris did serve in Company C, 3rd Infantry, Kentucky National Guard for three years from 8 March 1907 to 7 March 1910.
3. 3. B. WILLIAMS
Major General
The Adjutant General
18. The body of a letter, dated July 17, 1958, addressed to the Administrator of the Veterans Administration, from the Comptroller General of the United States reads:
By letter dated April 18, 1958, the Acting Director, Compensation and Pension Service, Veterans Administration, forwarded correspondence from the National Adjutant, Disabled Officers Association, relative to an increase of emergency officers’ retired pay in the case of Mr. Harold E. Morris.
*238 A claim on behalf of Mr. Morris, C 563 773, was transmitted to this Office by a letter dated June 28,1954, from the Veterans Administration. The claim was predicated on securing the inclusion of approximately three years’ National Guard service in the computation of his retired pay. Mr. Morris, a former officer, alleged that he served in Company “C,” 3d Infantry, Kentucky National Guard, from about March 8,1907, to about March 7,1910. In the absence of state records, which were purportedly destroyed by fire, affidavits executed on December 30, 1953, and January 6, 1954, by Mr. Carl Schenk and Mr. Irl Schenk, respectively, were submitted to substantiate the claim.
In our letter of September 2, 1954, to the Chief, Veterans Accounts Section, Veterans Administration, as well as in our letter of September 3, 1954, to Senator John C. Stennis, we said that the affidavits were not sufficient, under the long standing and uniform holdings of this Office, to establish Mr. Morris’ National Guard Service because they were based upon memory alone more than 40 years after the service, and they were not supported by any contemporaneous state record. Although a thorough search was made of the records of this Office for the years 1907 to 1910, we found payroll entries pertaining to H. R. Morris only for a summer encampment of 10 days, July 9 to 18, 1907. Hence, on the record of the case in September 1954 we concluded that Mr. Morris was not entitled to an increase in his rate of retired pay.
Attached to the correspondence forwarded by the Acting Director, Compensation and Pension Service, is the following certificate:
“COMMONWEALTH OK KENTUCKY MILITARY DEPARTMENT
OPEICE OP THE ADJUTANT GENERAL PRANKPORT
18 March 1958
CERTIPICATE OP SERVICE
“Pursuant to Senate Resolution No. 55, introduced 21 February 1958 and passed by the Senate of the Commonwealth of Kentucky, 6 March 1958, being directed by said Resolution to certify to the service theretofore in question of Harold R. Morris on the basis of affidavits now made of official record, I hereby do certify that, according to such official *239 affidavits now of record in the Department of Military Affairs, Harold E. Morris did serve in Company C, 3rd Infantry, Kentucky National Guard for three years from 8 March 1901 to 7 March 1910.
(s) J. J. B. Williams J. J. B. Williams
Major General The Adjutant General”
Such certificate is made “on the basis of affidavits now made of official record.” In other words, it apparently was executed on the basis of the affidavits discussed above. As heretofore pointed out, those affidavits may not be accepted as establishing the service claimed. Nor may a certificate, based on such affidavits, have any additional force or effect. Compare our decision of June 20, 1930, A-31680, in which it was said that “The affidavits, being recorded in the Adjutant General’s office, give the certificate based thereon no greater probative value than the affidavits.” Moreover, the affidavits now of record could not be considered as state records made contemporaneously during the period of the alleged service.
We may not accept the premise that the State of Kentucky can correct Mr. Morris’ records so as to entitle him to additional pay from Federal funds. See our decision of April 13, 1956, B-126671. Such power, with respect to Federal military records, is vested in the Secretary of the Army under the authority of Section 207 of the Legislative Eeorganization Act of 1946, as amended and codified in 10 U.S.C. 1552.
Accordingly, since the National Guard service of Mr. Harold E. Morris has not been established, no increase in the rate of his retired pay would be authorized on the present record.
19. (a) On September 19, 1958, plaintiff filed an application in which he requested the Army Board for Correction of Military Eecords to correct his records to show that he served in Company C, 3rd Infantry, Kentucky National Guard, from March 8,1907, to March 7,1910.
(b) On February 4,1959, a hearing was held by the Army Board for Correction of Military Eecords, at which plaintiff was represented by counsel. After review of plaintiff’s application, the case summary prepared by the Board’s examiner, the transcript of the hearing, and plaintiff’s military *240 files and records, the Board made the following findings, conclusions, and recommendation:
‡ ‡ $
THE BOARD FINDS:
1. That the applicant has exhausted all administrative remedies afforded by existing law or regulations.
2. That it incorporates and adopts by this reference so much of the Case Summary, Exhibit B above, as pertains to the factual showing of the Department of the Army records which generally reflect:
a. that the applicant requests correction of his military records to show that he served in the Kentucky National Guard from 8 March 1907 to 7 March 1910; and that such Federal service be credited to mm for retirement pay purposes;
b. that the applicant was appointed second lieutenant, Infantry Keserve, on 27 November 1917 and was ordered to extended active duty in such grade on the same date; that he was honorably discharged on 6 July 1920, in the grade of second lieutenant, and he was placed on the Emergency Officer Eetired List effective 2 July 1928;
c. that on 16 May 1952, The Adjutant General advised the applicant that the Department had exhausted every available source in an effort to verify his service with the Kentucky National Guard, but was unable to locate any record of this service; that the Kentucky Adjutant General reported that since many records prior to 1929 were destroyed by fire, a careful search of the records of Company “C”, Third Infantry, Kentucky National Guard, failed to indicate that he was a member of that organization ; and that the records of the General Accounting Office showed that the applicant was carried on payrolls with Company “C”, Third Kentucky Infantry, from 9 July to 18 July 1907; and that he had been credited with the period shown on the pay record;
d. that the applicant submitted several affidavits, one of which was from Irl Schenk, whose name was found on the muster roll of 1 April to 30 September 1908, and who certified that he enlisted in Company “O”, Third Kentucky Infantry, on or about 8 March 1907, and was discharged on or about 7 March 1910; and that the applicant, a neighbor and acquaintance, enlisted at the above organization at *241 the same time and served with him in such organization; and
e. that on 18 March 1958, The Adjutant General of the Kentucky National Guard, pursuant to Commonwealth of Kentucky Senate resolution passed on 6 March 1958, certified that according to official affidavits now of record in the Department of Military Affairs, applicant did serve in Company “C”, Third Infantry, Kentucky National Guard, for three years, from 8 March 1907 to 7 March 1910.
3. That on 22 December 1958, The Adjutant General stated that no administrative action could be taken to correct the applicant’s service record in consideration of the Comptroller General of the United States ruling (B-136477), dated 17 July 1958, to the effect that the certification by The Adjutant General of the Kentucky National Guard was made on the basis of affidavits which were based upon memory alone, more than 40 years after the service, and which were not supported by any contemporaneous state record; and that such certification could not be accepted as establishing the service claim so as to entitle the applicant to additional pay from Federal funds.
THE BOARD CON CLTJDES :
1. Although the applicant has been credited with service as shown by payroll records of the General Accounting Office, exhaustive search of the available records of Company “C”, Third Infantry, Kentucky National Guard, has failed to reveal the applicant’s name as a member of that organization.
2. That it concurs with the decision of the Comptroller General that Federal records may not be corrected solely on the basis of affidavits executed more than 40 years ago and not supported by any contemporaneous records of the local National Guard unit.
3. That although the Kentucky Legislature has passed a resolution to establish the applicant’s National Guard service for the full three year period, 1907 to 1910, such legislation was based solely on affidavit evidence which is not sufficient for correction of the official Department of the Army records.
4. That the Kentucky National Guard records reveal service during 1908 for Irl Schenk, one of the affiants in support of the applicant’s request, and it is reasonable to assume that some similar record relating to the applicant should have existed if he served such total enlistment.
*242 5. That insufficient basis exists for the correction of the applicant’s records, and no error or injustice is apparent in the Department’s position of denying such correction.
THE BOARD RECOMMENDS:
That in the case of harold r. morris, his application for correction of military records be denied.
(c) On March 4,1959, the Assistant Secretary of the Army approved the findings, conclusions, and recommendation of the Army Board for Correction of Military Eecords and denied plaintiff’s application.
20. The body of a letter, dated January 9, 1964, addressed to plaintiff’s counsel from the records custodian of the Office of the Adjutant General of Kentucky reads:
Under the existing regulations governing the Kentucky National Guard in the early nineteen hundreds, it would not be possible for a man to attend a summer encampment or other training sessions, unless he was a member of the National Guard. In the early nineteen hundreds, a man normally enlisted for three years, however he could resign at any time for a valid reason, such as removal from state, inability to attend drill, etc.
Your theory is in fact correct, that a man must have been a member of an active National Guard unit in order to attend summer encampment.
It is hoped that this information will tend to clear up some of the questions in your letter of 24 December 1963.
21. (a) The body of a letter, dated January 23, 1964, addressed to the chief of the National Guard Bureau from the records custodian of the Office of the Adjutant General of Kentucky reads:
1. Inclosed is a certified Kentucky National Guard statement of service, but it does not include active duty for training. In addition to the statement of service, the following information is given.
2. The quarterly muster roll of Company C, Third Kentucky Infantry, signed by Captain Hope Gates, indicates that Irl Schenk enlisted 8 March 1907 at Owensboro, Kentucky to serve three years. On a semiannual muster roll dated 31 March 1909, signed by Captain Hullihen I. Gans, indicates that Irl Schenk enlisted 17 April 1908 for Company C, Third Kentucky Infantry, Owensboro, Kentucky, to serve three years. A *243 semi-annual muster roll dated 30 September 1909, also indicates that Irl Schenk enlisted 17 April 1908 for Company C, Third Kentucky Infantry, Owensboro, Kentucky to serve three years.
3. A fire occurred at the State Arsenal, Frankfort, Kentucky on 30 June 1933. At that time some of the older military records of the Kentucky National Guard were stored there. As a result of this fire, certain records were destroyed. It is known that payrolls and NGB Forms 100’s prior to 1926 were destroyed. It is not known if any personnel records were destroyed, however, it is most probable that some were, therefore a record of active duty for training for Irl Schenk can not be furnished.
(b) Accompanying the foregoing letter was a certificate by the records custodian reading in part as follows:
KENTUCKY NATIONAL GUARD CERTIFICATE OF SERY- DATE ice 23 January 1964
Name, Last, First, Middle Service Number Grade Last Date of Birth Discharge 18 yrs of age at time of enlistment. Schenk, Irl Pvt
Place of Birth
Section I national guard service federally recognized
From To Organiza- Type Reason and AuTION THORITY OF DISCHARGE or Transfer
17April 1908 - 26 Jan 1911 Co. C, 3rd Inf. Hon. 26 January 1911, removal from State, Par 2 SO 13, AGO Ky dtd 25 Jan 1911.
22. The Act of January 21,1903, 32 Stat. 775 provided in Section 18 as follows:
Sec. 18 That each State or Territory furnished with materials of war under the provisions of this or former acts of Congress shall, during the year next preceding each annual allotment of funds, in accordance with section 1661 of the Kevised Statutes, as amended, have required every company, troop and battery in its organized militia * * * to go into camp of instruction at least five consecutive days * * *.
*244 23. On October 8, 1903, tbe War Department published an unnumbered Circular, signed by Eobert Shaw Oliver, Acting Secretary of War, as a preamble to the Military Code, which read as follows: (Law and Eegulations Governing the Organized Militia, War Department, 1904).
In view of the fact that the provisions of section 3 of the “Act to promote the efficiency of the militia, and for other purposes” approved January 21, 1903, which contemplates that the organization, armament and discipline of the organized militia of the several States and Territories and the District of Columbia should be the same as that which is now or may hereafter be prescribed for the. Eegular and Volunteer Army of the United States, it is highly desirable that the military laws of the several states should, in certain fundamental respects, meet the requirements of the general militia law in respect to the organization of these several military establishments.
24. The statutes of the Commonwealth of Kentucky, § 2705 (Eussell’s Statutes § 4729, in compliance with the Constitution of the Commonwealth § 221) provided, in 1907, in pertinent part as follows :
The organization, equipment and discipline of the militia shall conform as nearly as practicable to the regulations of the government of the Armies of the United States.
25. The Military Code (Act of January 21, 1903, 32 Stat. 755) provided in pertinent part as follows:
Article 47. Any man who is a citizen of the United States or has declared his intention to become a citizen, if more than 18 or less than 45 years of age, able-bodied, free from disease, of good character and temperate habits, may be enlisted in the National Guard of this [sic] state under the restrictions of this article, for a term of not less than five years * * *.
*****
Article 52. Dropping from the rolls. An enlisted man who shall remove his residence to such distance from the armory of his organization as to render it impracticable for him to perform his duties properly * * * may be dropped from the rolls of his company * * *.
*245 26. On all the evidence, it is found that plaintiff served as an enlisted man in the Kentucky National Guard from March 1907 to March 1910.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and judgment is entered to that effect. The amount of recovery will be determined pursuant to Kule 47 (c).
In accordance with the opinion of the court and memorandum report of the commissioner as to the amount due thereunder, it was ordered on September 2, 1965, that judgment for the plaintiff be entered for $3,089.07, for the period from August 1,1955, to June 11,1965.

 Defendant’s motion to dismiss, filed in 1961, argued that, on other grounds, plaintiff had failed to state a claim upon which relief could be granted; there was also a brief comment in defendant’s reply (filed in August 1963) to plaintiff’s supplemental memorandum (on that motion) that the Career Compensation Act of 1949 did not permit adjustment in creditable service performed prior to October 1, 1949. However, the briefs on the commissioner’s report, after trial, did not advert to this problem. The present argument of lack of statutory foundation for plaintiff’s claim was first brought home to the court by the defendant at the oral argument. After argument, the parties filed supplemental briefs on that point. In the circumstances, we feel that the question should be faced. The present defense of failure to state a claim was mentioned, though briefly, in connection with the defendant’s earlier motion to dismiss, and in any event such a defense is not waived by its omission from a motion to dismiss (Rule 20(h)). The matter has now been fully briefed: and plaintiff does not contend that it should not be reached. The court has power to consider it (see Rule 20(c)), and it would be inappropriate to grant a judgment for plaintiff if he has no statutory right to the pay he asks.

 In the Act of July 9, 1918, 40 Stat. 845, 875, Congress provided that World War I non-regular officers could get credit for prior National Guard Service, but the Act of June 4, 1920, 41 Stat. 759, 785, excluded such service in the computation of longevity pay. Plaintiff was not discharged until July 6, 1920, after the Act of June 4th had become effective.

 Plaintiff points out that the 1928 Act also gave the emergency officers the “privileges” of regular officers retired for physical disability, and suggests that the statutory reference to pay “at the time of discharge” should not be read literally so as to differentiate between regulars and non-regulars, and among the latter class between those discharged prior to June 4, 1920, and those retired thereafter. See footnote 2, supra. But the Congressional words as to the measure of pay are too clear, and have been too consistently construed, for us now to say that pay “at the time of discharge” means something other than the pay the emergency officer was receiving when he left active service in or after World War I.

 The court’s prior decision in this case of November 15, 1963,163 Ct. Cl. 259, did not preclude plaintiff from presenting anew the materials he had offered to the Correction Board. We note also that the commissioner’s findings disclose some items of evidence of which the court was not aware at the time of its earlier decision on the motion to dismiss the petition.
Since all the proof was documentary, the trial commissioner was in no special position to judge credibility, and Rule 66 has less- application.

 Plaintiff explains that Ms enlistment terminated because he left the state.

 The letter was offered and received in evidence only for the purpose of showing that plaintiff did at a certain date make the assertion contained in the letter. The letter was not offered or received in evidence for the purpose of establishing the truth of the contents of the letter.