**Rodney ALDER, Rita Alder, Marden Alder, Sharon Alder, Estate of Elbert Alder, and Beaulah Alder**

v.

**The UNITED STATES.**

No. 37–83L.

United States Claims Court.

March 22, 1985.

David L. Curl, Tucson, Ariz., for plaintiffs. Louis W. Barassi, Tucson, Ariz., of counsel.

Patricia N. Young, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, Washington, D.C., for defendant.

## OPINION

WHITE, Senior Judge.

This is a companion case to *Bundrick v. United States*, 7 Cl.Ct. 532 (1985). The facts and the legal issues in this case are quite similar to those involved in the *Bundrick* case.

The background information set out in the *Bundrick* opinion under the headings, *"The San Carlos Mineral Strip"* and *"Remedial Legislation,"* is equally applicable to the present case, and it will not be repeated in this opinion.

The plaintiffs in this case complain that the United States has deprived them of the use and benefit of certain land which they own in fee and of improvements which they placed on other lands which they formerly used under permits issued by the Bureau of Land Management, Department of the Interior.

### The Facts

The fee land is a 400.25-acre parcel that is situated in section 27, T. 5 S., R. 21 E., Gila and Salt River Base and Meridian, Graham County, Arizona. The parcel is

generally rectangular in shape and it occupies somewhat more than the W ½ of section 27 (except the SW ¼ SW ¼, which is owned in fee by someone else). The southern boundary of the San Carlos Mineral Strip bisects the Alders' fee land from east to west, with 196.13 acres of the fee land lying north of the boundary line and inside the Mineral Strip, and 204.12 acres of the fee land lying south of the boundary line and outside the Mineral Strip.

The Alder family acquired the fee land in about 1960. From that time until approximately 1973, they maintained on the portion of the fee land within the Mineral Strip a nice brick residence, with two bedrooms, a bathroom, a fireplace, and furniture; a water well; and a light plant. Butane gas was used as a source of power. None of the Alders ever lived in the house, although members of the family occasionally spent weekends there. The house was usually occupied by an employee (and, presumably, the employee's family).

In addition to the house, the Alders maintained two bunkhouses and other elements of a ranch headquarters on the portion of the fee land located within the Mineral Strip.

The validity of the plaintiffs' title to the fee land is not questioned by the defendant in the present litigation.

The Alders operated a cattle ranch in federal Range Unit 26 from about 1960 until 1973. The ranch consisted of the fee land previously mentioned and of land which they used until 1969 under permit from the Bureau of Land Management. Part of the federal land was inside and part was outside the exterior boundary of the San Carlos Mineral Strip. The federal land inside the Mineral Strip consisted of all or part of 13 sections of land. The ranch house and other elements of the ranch headquarters were located on the portion of the fee land lying inside the Mineral Strip.

In addition to the permanent improvements which the Alders placed on the fee land inside the Mineral Strip, as previously mentioned, they also placed permanent improvements on the federal land inside the Mineral Strip which they used under permit.

The only feasible means of reaching the Alders' fee land in section 27 is over a graded road, known as the Goodwin Wash Road, running in a southwesterly direction from outside the San Carlos Mineral Strip, and then passing over approximately 8.5 miles of land within the Mineral Strip before reaching the Alders' fee land in section 27. Until January 1969, the 8.5-mile portion of the road within the Mineral Strip first crossed about a mile of federal land and then crossed state land and patented land belonging to other persons before reaching the Alders' fee land.[1]

In addition to operating a ranch in Range Unit 26, the Alders also conducted a cattle ranching operation in federal Range Unit 30 from about 1960 until 1973. This ranching operation did not include any fee land owned by the Alders. It was established on federal land which the Alders used under a permit from the Bureau of Land Management. Part of the federal land was inside and part was outside the exterior boundary of the San Carlos Mineral Strip. The portion inside the Mineral Strip included all or part of six sections of land. The ranch headquarters, a pond, and other permanent improvements were maintained by the Alders on the federal land lying inside the Mineral Strip.

After the effective date of the restoration order of January 16, 1969 (34 Fed.Reg. 1195), restoring the federal land within the San Carlos Mineral Strip to the San Carlos Apache Indian Tribe and making such land part of the San Carlos Indian Reservation, the Alders no longer had permits from the Bureau of Land Management for the use of the former federal land within Range Unit 26 and Range Unit 30 that had become

---

1. It is possible to reach the Alders' fee land in section 27 over an alternate road, but the road is very rough, it can be traversed only by four- wheel-drive motor vehicles, and it cannot be used to transport cattle to or from the Alders' fee land.

Indian land. In 1970, 1971, and 1972, however, the Alders obtained from the Indian tribe 1-year permits that permitted them to continue to use such land; and this enabled the Alders to continue their ranching operations in Range Unit 26 and Range Unit 30.

In the early part of 1973, however, the Alders and all other non-Indian ranchers using Indian land within the San Carlos Mineral Strip were notified that no further permits would be issued to non-Indians after the expiration of the then-current permits at the close of June 30, 1973, and that the non-Indian ranchers must remove their cattle from the Indian land before the June 30 expiration date.

Because the fee land which they owned in section 27 and the federal land which they still held under permit in Range Units 26 and 30 did not provide adequate resources for continued ranching operations, the Alders discontinued their ranching operations in the two range units after the expiration of their final permit from the Indian tribe on June 30, 1973.

After the former federal land within the San Carlos Mineral Strip became Indian land, the Indian tribe began constructing a fence along the exterior boundary of the Mineral Strip. The fence along the southern boundary of the Mineral Strip was not built across the Alders' fee land in section 27; but the fence was built in such a way as to segregate the fee land from the Indian land.

Also, subsequent to January 1969, the Goodwin Wash Road crossed about a mile of Indian land after it reached the Mineral Strip boundary on the way to the Alders' fee land in section 27. The Alders, and all other persons crossing Indian land in order to reach patented lands, were notified by the Indian tribe that they should obtain permits authorizing them to cross Indian land. The Alders have never applied for or obtained permits from the Indian tribe; and they have continued to use the Goodwin Wash Road in traveling to and from their fee land in section 27. They have been stopped and questioned by Indian police on several occasions while traveling over the portion of the road that crosses Indian land, but they have never been prevented from using the road without a permit.

Since land adjacent to the Alders' fee land in section 27 became Indian land in January 1969, there have been incidents of vandalism on the portion of the fee land lying inside the boundary of the San Carlos Mineral Strip and inside the Indian reservation. The ranch house has been virtually destroyed. The windows have been destroyed, the doors have been taken away, the electric wiring has been torn out, and an unsuccessful effort was made to tear out the firebox in the fireplace. A complaint was made by the Alders to the Sheriff of Graham County, but his response was that the county did not have any jurisdiction over criminal offenses committed within the San Carlos Indian Reservation.

Also, after the federal land which the Alders formerly used in Range Unit 30 became Indian land, there has been vandalism on improvements which the Alders maintained on such land.

The vandalism mentioned in the two immediately preceding paragraphs was committed by persons unknown. There is nothing in the record to indicate that personnel of the United States was involved. The evidence in the record does show, however, that personnel of the Bureau of Indian Affairs, after the land used by the Alders in Range Unit 30 became Indian land, drained the pond which the Alders had maintained on such land.

Following the enactment in December 1974 of Public Law 93–530 (88 Stat. 1711), authorizing and directing the Secretary of the Interior to purchase all patented lands within the San Carlos Mineral Strip and to reimburse ranchers within the Mineral Strip for the improvements which they had maintained on former federal land under permit, the Interior Department engaged independent professional appraisers to appraise the value of all such patented lands and related improvements. On the basis of the appraisals, the Interior Department

then made offers to the ranchers within the Mineral Strip, including the plaintiffs.

The appraisal of the plaintiffs' fee land and improvements within the San Carlos Mineral Strip was completed in late 1977. The Interior Department offered the plaintiffs $24,455 for their improvements on former federal land in Range Unit 30 that had become Indian land, and $116,174.98 for their improvements on former federal land in Range Unit 26 that had become Indian land and for the purchase of the portion of their fee land in section 27 lying within the San Carlos Mineral Strip.

These offers were rejected by the plaintiffs, who were dissatisfied with the selection of January 24, 1969, as the date for the valuation of the improvements and the fee land. The Alders contended that the improvements in Range Unit 30 should be valued at $63,000, and that the improvements and the fee land in Range Unit 26 should be valued at $195,000. They made a counterproposal along those lines, but the Interior Department did not accept the counterproposal.

On September 17, 1982, the plaintiffs filed a complaint in the United States District Court for the District of Arizona. The complaint named as defendants the United States, the Department of the Interior, the Secretary of the Interior, an official of the Bureau of Indian Affairs, and the San Carlos Indian Tribe.

In an order dated December 22, 1982, the District Court transferred to this court (as successor to the United States Court of Claims) the complaint against the United States, and dismissed without prejudice the complaint insofar as it named other defendants.

### Discussion

In the complaint against the United States, the plaintiffs combine (1) allegations regarding improper administration by the Interior Department of the remedial provisions of Public Law 93–530, with (2) assertions to the effect that actions by the Federal Government have effectively deprived them of the use of their property

and, accordingly, their property has been taken for the benefit of the United States without just compensation.

### Claim Under Public Law 93–530

With respect to the plaintiffs' contention that the Interior Department improperly administered, as to them, the provisions of Public Law 93–530, it will be assumed for the purpose of discussion—but without deciding—that the plaintiffs could assert a cause of action under Public Law 93–530 if the Secretary of the Interior (or his representatives) failed to value properly the plaintiffs' fee land and improvements within the San Carlos Mineral Strip.

■ It appears that the plaintiffs' claim under Public Law 93–530 did not arise any earlier than late December 1977. It was then, according to the evidence in the record, that the Interior Department first announced its decision regarding the amounts that would be paid to the plaintiffs for their fee land and improvements upon the basis of the appraisal reports previously prepared by a firm of professional appraisers. Until that time, the Interior Department had not taken any action under the statute which adversely affected the plaintiffs, and thus had not previously fixed the liability (if any) of the Federal Government. Consequently, the 6-year period of limitations for the filing of an action against the Government (28 U.S.C. § 2501 (1976)) had not begun to run. *Cf. Japanese War Notes Claimants Association of the Phillipines, Inc. v. United States,* 178 Ct.Cl. 630, 632–33, 373 F.2d 356, 358, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967), *rehearing denied,* 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1968); *Fattore v. United States,* 160 Ct.Cl. 666, 670, 312 F.2d 797, 800 (1963).

■ Accordingly, when the plaintiffs filed their complaint in the District Court on September 17, 1982, they acted within the prescribed 6-year period of limitations following the accrual of the claim in late December 1977.

■ The plaintiffs had the burden, however, of presenting at the trial facts sufficient to prove by a preponderance of the evidence that personnel of the Interior Department failed to value properly their fee land and improvements within the San Carlos Mineral Strip. *Loesch v. United States,* 227 Ct.Cl. 34, 44, 645 F.2d 905, 914 (1981); *Bonnar v. United States,* 194 Ct.Cl. 103, 145, 438 F.2d 540, 562 (1971); *Morris v. United States,* 171 Ct.Cl. 220, 228 (1965). The plaintiffs did not meet this burden.

The principal allegation in the complaint concerning the administration of Public Law 93–530 is that January 24, 1969, was arbitrarily set as the date for the valuation of the plaintiffs' fee land and improvements within the San Carlos Mineral Strip, and that the selection of this date effectively denied the plaintiffs proper compensation for their property. This objection is not well taken.

■ Section 1 of the pertinent statute authorized and directed the Secretary of the Interior "to acquire through purchase within the so-called San Carlos Mineral Strip *as of January 24, 1969,* all privately owned real property, taking title thereto in the name of the United States in trust for the San Carlos Apache Indian Tribe" (emphasis supplied). It was not arbitrary for the Interior Department to take the position that Congress had fixed the precise date as of which patented lands within the Mineral Strip should be acquired from landowners willing to sell.

■ It is true that section 2 of Public Law 93–530, authorizing and directing the Secretary of the Interior to reimburse landowners within the San Carlos Mineral Strip for the permanent improvements placed by them on lands previously held under leases or permits from the Federal Government, did not specify the date as of which the value of the improvements should be determined. The section did state, however, that reimbursement should be "for the reasonable value of such improvements *as determined by the Secretary* " (emphasis supplied). The evidence in the record would not support a finding that the Interi-

or Department was guilty of an abuse of the discretion vested in the Secretary when personnel of the Department decided that the permanent range improvements on former federal land should be valued as of the same date determined by the Congress for the acquisition of patented lands within the Mineral Strip.

Moreover, the plaintiffs did not offer any evidence at the trial tending to prove that, if some date other than January 24, 1969, had been selected as the date of valuation, the fair market value of their patented land and the improvements which they placed on former federal land within the San Carlos Mineral Strip would have been greater than the total figure of $140,629.98, which the Interior Department offered to pay the plaintiffs under the provisions of Public Law 93–530.

Another allegation in the complaint with respect to the administration of Public Law 93–530 by the Interior Department is to the effect that the Department has paid unequal prices to claimants, and has thereby violated the Equal Protection Clause of the Constitution. The plaintiffs did not offer any evidence at the trial in support of this allegation.

■ By way of summary, the plaintiffs failed to prove at the trial that the Interior Department, in administering the remedial provisions of Public Law 93–530 as to the plaintiffs, violated any rights which the plaintiffs may have had under the statute. (It is assumed that $140,629.98 is still available to the plaintiffs under the statute.)

### Claim Under Fifth Amendment

Insofar as the plaintiffs are suing for just compensation under the Fifth Amendment to the Constitution, it apparently is the plaintiffs' theory of liability with respect to the improvements which they placed on former federal land within the San Carlos Mineral Strip that "[w]hen Plaintiffs lost the right of use to the [federal] leased land, they lost the right to use of their improvements."

**548**

■ The plaintiffs' right to use the former federal land which they held under permit was lost not later than July 1, 1973, when the San Carlos Apache Indian Tribe refused to permit the plaintiffs (and other non-Indian ranchers within the Mineral Strip) to use Indian land any more for ranching operations. Accordingly, any legal claim which the plaintiffs may have had against the United States for the value of the improvements on former federal land accrued not later than July 1, 1973.

■ The plaintiffs were required by 28 U.S.C. § 2501 (1970) to institute an action against the United States under the Fifth Amendment for the alleged taking of the improvements within 6 years after the claim first accrued. The plaintiffs failed to meet this mandatory deadline when they filed their original complaint in the District Court on September 17, 1982.

With respect to the plaintiffs' claim for just compensation under the Fifth Amendment for the alleged taking of their patented land in section 27, the plaintiffs argue that their land was effectively taken through the action of the Federal Government in restoring to tribal ownership the former federal land in the San Carlos Mineral Strip. As a result of that action, according to the plaintiffs, they have been deprived of an enforceable legal right of ingress and egress to and from their patented land over the Goodwin Wash Road, which they formerly had; there is no longer any market for the patented land, and it has no value as collateral for a loan; and the patented land can no longer be used as part of a viable ranching operation, without the use of the former federal land within the San Carlos Mineral Strip which the plaintiffs were permitted to use in conjunction with their patented land.

The action of the United States in restoring the former federal land within the San Carlos Mineral Strip to tribal ownership was completed upon the promulgation of the restoration order in January 1969. Thereafter, the Goodwin Wash Road traversed some Indian land on its way to the plaintiffs' fee land; and use of the road by the plaintiffs depended upon the permission (tacit or express) of the Indian authorities.

■ The plaintiffs were permitted by the Indian tribe to continue to use for ranching purposes, until June 30, 1973, the same land within the Mineral Strip that they formerly used under federal permit. Thus, the plaintiffs continued to have a viable ranching operation until June 30, 1973, with their patented land in section 27 as a base. Beginning on July 1, 1973, however, and continuing thereafter, the loss of the use of the former federal land in the San Carlos Mineral Strip rendered the plaintiffs' patented land useless as part of a ranching operation, according to the evidence in the record. Therefore, any claim which the plaintiffs may have had against the United States for the alleged taking of their patented land accrued no later than July 1, 1973.

■ Consequently, the plaintiffs had a 6-year period beginning July 1, 1973, at the latest, within which to institute an action on their taking claim under the Fifth Amendment with respect to the fee land. The plaintiffs' original complaint was filed at least 9 years after the claim first accrued, and it was too late.

### CONCLUSION OF LAW

For the reasons stated in the opinion, the court concludes as a matter of law that the plaintiffs are not entitled to recover.

The complaint will therefore be dismissed by the clerk.

IT IS SO ORDERED.