CASCADE DEVELOPMENT CO., INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 342–86L.

United States Claims Court.

July 7, 1987.

Roland L. Skala, Yakima, Wash., for plaintiff.

Glen R. Goodsell, Washington, D.C., for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This action comes before the court on defendant's motion to dismiss for lack of jurisdiction or in the alternative, motion for summary judgment. The dispositive issue is whether plaintiff's claim is time-barred by the statute of limitations.

## FACTS

Plaintiff, Cascade Development Company, Inc. (Cascade), is the owner of patented mining claims located in Sections 17, 18, 19, 20 and 21 of Township 24 North, Range 13 E.W.M., King County, Washington, commonly known as the Dutch Miller Mine. The mine is located eight miles from an accessible road in a remote high area. Access to this property has been a problem for years due to the mine's location.

In August 1956, Cascade leased Dutch Miller Mine to Cougar Development Corporation (Cougar) to mine the property. In 1968, Cougar was issued a permit by the United States Forest Service to construct a road across National Forest Land to the mine. After conservation groups opposed to the road appealed to the Secretary of Agriculture, the Forest Service cancelled the road construction permit in 1969. In its place, the Forest Service undertook to widen an existing trail in the Middle Fork of Snoqualmie River to accommodate an experimental two-wheeled vehicle called the "gyro-carrier." Work on the trail was halted in 1970 upon advice by the Department of Justice of another suit filed by conservation groups. Cougar intervened when it became apparent that the Forest Service was not going to honor its trail reconstruction contract, but the suit was dismissed when it became obvious that the "gyro-carrier" concept would not work. Further attempts to obtain a road construction permit by Cougar and Cascade were unsuccessful.

On July 12, 1976 the Alpine Lakes Management Act (Alpine Act) was enacted, designating the Alpine Lakes Wilderness as federal land. Alpine Lakes Area Management Act of 1976, Pub.L. No. 94-357, § 4, 90 Stat. 905 (1976). The act directed the Secretary of Agriculture to acquire lands in both Wilderness and Intended Wilderness areas. The Dutch Miller Mine lies within the Wilderness area.

Plaintiff thereafter initiated suit in the United States District Court for the Western District of Washington, requesting a writ of mandamus to compel the Secretary of Agriculture to purchase the property and for declaratory judgment. The suit was dismissed without prejudice on May 29, 1986 because the district court determined that plaintiff's cause of action should be before the Claims Court. Plaintiff then filed this suit on June 2, 1986.

## DISCUSSION

[1] The statute of limitations applicable to this court provides that:

Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

28 U.S.C. § 2501 (1982). This statute is a strictly construed jurisdictional requirement. *Kirby v. United States*, 201 Ct.Cl. 527, 539 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Ellis v. United States*, 1 Cl.Ct. 141, 143 (1983). "As a general rule, a claim first accrues when all events necessary to fix liability have occurred." *Farrell v. United States*, 9 Cl.Ct. 757, 759 (1986). Thus, the dispositive question in this case is whether plaintiff's taking claim accrued anytime prior to June 2, 1980, six years before plaintiff filed its complaint in this court.

In *Mitchell v. United States*, 10 Cl.Ct. 63 (1986), the court discussed the law on the accrual of a claim for purposes of the statute of limitations:

[T]he law does not insist that one be certain of the existence of a course of action before the statute of limitations may commence running. Rather, reasonable diligence in the protection of one's interest dictates that where there is reason to suspect there is reason to inquire and, therefore, " '[w]hatever is notice enough to excite attention and put the

party on his guard and call for inquiry, is [also] notice of everything to which such inquiry might have led.'" *Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 141, 25 L.Ed. 807 (1879) (quoting the early English Chancery case, *Kennedy v. Greene*, 3 Myl. & K. 722). Knowledge of a cause of action sufficient to trigger the running of the statute of limitations may, therefore, be as much a matter of constructive notice as of actual notice. Moreover, facts demanding further action are not just those that reveal the existence of a cause of action with certainty. Even rumors or vague charges may demand pursuit "if of sufficient substance to arouse suspicion." *Tobacco and Allied Stocks, Inc. v. Transamerica Corp.*, 143 F.Supp. 323, 331 (D.Del.1956), *aff'd*, 244 F.2d 902 (3d Cir.1957).

*Id.* at 67–68.

There are several incidents where plaintiff's property rights were restricted, giving rise to both actual and constructive notice to the plaintiff of its cause of action before June 2, 1980. One such incident occurred in 1969 when the Forest Service denied Cougar a road construction permit for access to the Dutch Miller Mine. A similar situation involving denial of access occurred in *Alder v. United States*, 7 Cl.Ct. 542 (1985), *aff'd*, 785 F.2d 1004 (Fed.Cir. 1986), *cert. denied*, — U.S. —, 107 S.Ct. 72, 93 L.Ed.2d 29 (1986), where the court held that a taking claim accrued when plaintiff's land was rendered useless for ranching purposes because it was deprived of its right of ingress and egress. *Alder* at 548. Until 1973, the plaintiff in *Alder* had been permitted by an Indian tribe to cross reservation land to access its ranch. *Id.* The court determined that the land was not viable for ranching operations because the only feasible means of reaching Alder's fee land was on the reservation road, despite the existence of an alternate road. *Alder*, 7 Cl.Ct. at 544.

The court finds the analysis in *Alder* to be equally applicable here because plaintiff's mine was rendered useless due to lack of viable access to the property. The Forest Service studied alternate access methods to the Dutch Miller Mine, but determined that the construction of a road was the only practicable means of accessing plaintiff's mining property. The court finds that plaintiff's inability to mine the property without a road construction permit was constructive if not actual notice of its alleged fifth amendment cause of action. This finding is buttressed by plaintiff's own admission in an affidavit: "[i]n about 1969, the Forest Service denied a permit for access to the property sought by Cougar Development Company, the Cascade Company's lessee, and ... interest accrues from that date." It is clear to the court that plaintiff knew in 1969 that access to the property had been denied, which fixed the date of accrual for purposes of the statute of limitation's period.

Other similar incidents followed plaintiff's denial of access in 1969. Subsequent to cancellation of the road permit, the Forest Service undertook to reconstruct an existing trail in the Middle Fork Snoqualmie River Valley to accommodate the experimental "gyro-carrier". This project was prevented in 1970 by conservation groups seeking to enjoin the issuance of any permit for the operation of motorized vehicles in the Middle Fork. Inquiries by Cougar made it apparent that the Forest Service would not issue the necessary permit(s). In an affidavit, Cougar stated: "My efforts to gain access to the property spanned a four-year period, from 1966 to 1970.... All our requests were denied." This further indicates to the court that the events necessary to fix liability had occurred and plaintiff's cause of action had accrued long before plaintiff filed an action in this court. *See Farrell*, 9 Cl.Ct. at 759 (1986).

█ Even assuming, *arguendo*, that the events discussed above did not adequately give plaintiff notice of its cause of action, the enactment of the Alpine Lakes Area Management Act of 1976 (Alpine Act) did. The Alpine Act authorized and directed the Secretary of Agriculture to acquire lands within the Wilderness and Intended Wilderness areas of the Alpine Lakes Wilderness

**590**

region. Alpine Lakes Wilderness Act of 1976, Pub.L. No. 94–357, § 4(a), 90 Stat. 905, 906 (1976). By this time, any remaining expectation by plaintiff to obtain a road construction permit was unreasonable because the enactment of the Alpine Act was actual notice of the government's intentions to preserve the wilderness area. *See Beneson v. United States,* 212 Ct.Cl. 375, 390, 548 F.2d 939, 948 (1977). Plaintiff argued that because Congress specifically directed the Secretary to acquire the Intended Wilderness no later than July 12, 1979, Alpine Lakes Area Management Act of 1976, Pub.L. No. 94–357, § 4(c)(1), 90 Stat. 905, 906–07 (1976), it was logical to assume that a period similar in length was intended to acquire the Wilderness area. Even if this argument had merit, both the July 12, 1976 enactment of the Alpine Act and congressional direction to purchase the property by July 12, 1979 ended well before June 2, 1980. If anything, notice to plaintiff was more direct because congress had not specifically established a time-frame for acquisition of the wilderness area. Plaintiff also contended that Congress meant to permit a reasonable period for the conclusion of good faith negotiations. However, settlement negotiations do not toll the statute of limitations. *See Mesa Ranch Partnership v. United States,* 2 Cl.Ct. 700, 708 (1983).

The court in *Beneson v. United States,* 212 Ct.Cl. 375, 548 F.2d 939 (1977) recognized the cumulative effect of actions of government officials in compensating a land owner for alleged violations of property rights. *Id.* at 390, 548 F.2d at 9487. It is evident from the record that plaintiff's difficulties spanned years of unsuccessful efforts to mine its property. Although this court does not insist that one be certain of the existence of a cause of action before the statute of limitations may commence running, given the events discussed above, the court has no difficulty in determining that plaintiff's claim accrued prior to 1980.

## CONCLUSION

Following the foregoing analysis, the court concludes that plaintiff's claim accrued before June 2, 1980, and is therefore time-barred by the statute of limitations. Defendant's motion to dismiss is granted and the Clerk is directed to enter judgment dismissing the complaint.