**Rodney ALDER, Rita Alder, Marden Alder, Sharon Alder, Estate of Elbert Alder, and Beaulah Alder, Appellants,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 85–2317.**

United States Court of Appeals, Federal Circuit.

Feb. 28, 1986.

David L. Curl, Barassi & Curl, P.C., Tucson, Ariz., argued for appellants.

Laura Frossard, Dept. of Justice, Washington, D.C., argued for appellee. With her on brief, were F. Henry Habicht, II, Asst. Atty. Gen. and David C. Shilton.

Before DAVIS, Circuit Judge, MILLER, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Appellants Rodney Alder, Rita Alder, Marden Alder, Sharon Alder, Estate of Elbert Alder, and Beaulah Alder (the Alders) appeal from the decision of the United States Claims Court dismissing their claim in inverse condemnation against the United States. This appeal was consolidated for argument with that of *Bundrick v. United States*, 785 F.2d 1009, also decided this day.

The detailed background of this case is set forth in the findings and opinion of the Claims Court, 7 Cl.Ct. 542 (1985), and will not be repeated. There are two interrelated subjects of this appeal: those relating to compensation under the San Carlos Mineral Strip-Purchase, Pub.L. No. 93–530, 88 Stat. 1711 (1974), and those relating to a Fifth Amendment taking claim.

### A. Public Law 93–530

Reference is made to the opinion of the Claims Court for the history of this statute, enacted December 22, 1974, which provided certain relief to property owners within the San Carlos Mineral Strip. The pertinent provisions of Public Law 93–530 are:

Sec. 1. The Secretary of the Interior (hereinafter referred to as the "Secretary") is hereby authorized and directed to acquire through purchase within the so-called San Carlos Mineral Strip as of January 24, 1969, all privately owned real property, taking title thereto in the name of the United States in trust for the San Carlos Apache Indian Tribe.

Sec. 2. The Secretary is authorized and directed to purchase from the owners all range improvements of a permanent nature placed, under the authority of a permit from or agreement with the United States, on the lands restored to the San Carlos Apache Indian Tribe for the reasonable value of such improvements, as determined by the Secretary. . . .

Although appellants have intertwined the issues arising from Public Law 93–530 and those based on the Fifth Amendment, the Claims Court properly treated them separately. Thus, although appellants' objection to the valuation of their property by the Secretary of the Interior was couched in part in Fifth Amendment taking terms, the Claims Court considered separately its judicial review of the administration of Public Law 93–530. The statute is silent on this point, and the Claims Court stated that it assumed, without deciding, that it had jurisdiction to review the correctness of the valuation of the Alders' property.

■ In general, absent statutory provision to the contrary, judicial review of administrative action is favored. *See Friedman v. United States*, 310 F.2d 381, 159 Ct.Cl. 1 (1962), *cert. denied sub nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963), and cases cited therein; *see also Sierra Club v. Peterson*, 705 F.2d 1475, 1478–79 (9th Cir.1983). In *Snowbank Enterprises, Inc. v. United States*, 6 Cl.Ct. 476 (1984), the Claims Court reviewed an administrative valuation of property in implementation of a similar remedial statute.

Appellants challenge the provision in Public Law 93–530 that set January 24, 1969 as the date of valuation of their real property. Appellants also challenge the Secretary of the Interior's use of the same 1969 date for valuation under Section 2 of the permanent range improvements on the leased grazing land.

The Claims Court held that the Alders had not met their burden of proving, by a preponderance of the evidence, that their holdings had been improperly valued. The court observed that the Alders had offered no evidence that the fair market value of either their fee land or the improvements on the leased land had a higher market value after January 24, 1969, the date that the United States transferred ownership of the federal leased land to the San Carlos Apache Indian Tribe. Appellants state in their brief "[i]f the Secretary had used 1977 as the date of valuation, there would have been no problem at all". Appellants do not explain how this would benefit them, since they insist that their land became worthless in 1973.

The Alders do not deny that they submitted no alternative appraisals, but rather assert that the trial before the Claims Court was "for liability only". Whether or not this statement is correct insofar as Fifth Amendment liability is concerned, liability under Public Law 93–530 was not at issue before the Claims Court, and has not been denied by the government.

■ The Alders also argue that they are entitled to compensation for the value of certain contiguous land (204.12 acres) outside the San Carlos Mineral Strip, which they state is now "useless". Public Law 93–530 refers only to land within the San Carlos Mineral Strip. Since the purpose of Public Law 93–530 was to reacquire lands that at one time were part of the San Carlos Apache reservation, there is no obligation on the United States under this stat-

ute to acquire land in addition to that acquired for the benefit of the San Carlos Apache Tribe. We discern no basis for overturning the Claims Court's decision that the statute was properly administered.

■ We affirm the Claims Court's holding that the valuation conditions set in P.L. 93–530 are not unreasonable, and that the Secretary reasonably executed the statute in valuing the improvements on the leased grazing land, as well as the fee land, as of January 1969. *See Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694, *reh'g denied,* ── U.S. ──, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984).

■ Appellants also raise the question of payment of interest, asserting that fairness requires, if their property is valued as of 1969, that interest be paid on that amount. The government argues that because Public Law 93–530 does not expressly provide for the payment of interest the government is not liable therefor, citing *United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585, 588–90, 67 S.Ct. 398, 399–401, 91 L.Ed. 521 (1947), and *Snowbank Enterprises, Inc. v. United States*, 6 Cl.Ct. at 495. These cases acknowledge the obligation of the United States to pay interest on Fifth Amendment takings, but as stated in *Thayer-West Point*, 329 U.S. at 589–90, 67 S.Ct. at 400–01:

> [I]n the absence of constitutional connotations, "just compensation" is not a term of art so far as interest is concerned. The inclusion or exclusion of interest depends upon other contractual provisions, the intention of the parties and the circumstances surrounding the use of the term.

*See also Jacobs v. United States*, 290 U.S. 13, 16, 54 S.Ct. 26, 27, 78 L.Ed. 142 (1933); *Tillson v. United States*, 10 Otto 43, 47, 100 U.S. 43, 47, 25 L.Ed. 543 (1879). Public Law 93–530 is silent as to the payment of interest. As in *Thayer-West Point*, 329

U.S. at 590, 67 S.Ct. at 400, "the intention of Congress to permit the recovery of interest must be expressly and specifically set forth in the statute." Principles of statutory construction require the assumption that Congress was aware, when Public Law 93–530 provided that the property would be valued as of a date five years earlier than the date of enactment, that omitting express provision for the payment of interest would negate the recovery of interest.

### B. The Fifth Amendment

Without deciding whether the Alders could have made any claim under the Fifth Amendment for the taking of improvements on land they originally leased under the Taylor Grazing Act, 43 U.S.C. §§ 315–315g, 315h–315m, 315n and 315o –1, and after January 1969 leased from the San Carlos Apache Tribe,[1] the Claims Court held that any such claim accrued no later than July 1, 1973, the expiration of the final lease from the San Carlos Tribe, and thus was time barred under 28 U.S.C. § 2501 when the Alders filed their complaint in the United States District Court for the District of Arizona on September 17, 1982. 28 U.S.C. § 2501 provides that:

> Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

With respect to the Alders' fee land within the San Carlos Mineral Strip, the Claims Court reasoned first that the taking occurred in January 1969, on the basis that the Alders' access to their fee land was possible thereafter only by suffrance of the Indian authorities. The fee land continued to be used as the Alders' ranching base until July 1973, when ranching became no longer possible because of loss of the Alders' leasehold for the grazing land owned by the San Carlos Apache Tribe. Thus, the

---

**1.** 43 U.S.C. § 315b provides that "the issuance of a permit pursuant to the provisions of this chapter shall not create any right, title, interest, or estate in or to the lands." However, § 315c provides that a successor permittee under the Act shall "[pay] to such prior occupant the reasonable value of such improvements."

Claims Court held in the alternative, the taking of the fee land accrued no later than July 1973. The Claims Court held that this claim was also time barred under 28 U.S.C. § 2501.

Appellants argue that these holdings are incorrect, asserting that there was no time certain at which taking could reasonably have accrued prior to the valuation of their property in 1977, when it first appeared to the Alders that they might not receive adequate compensation under Public Law 93–530. They argue that their property rights were continuously affected until 1977–79 when their last neighbors left and their use of and access through certain state lands within the San Carlos Mineral Strip were lost upon settlement of litigation between the State of Arizona and the United States in 1978. The Alders argue that their fee lands have still not been "taken" in that they still own them and pay taxes on them. (On this basis, the government refuses to concede that the Alders ever had a Fifth Amendment claim—even as the government argues that it is time barred).

■ Appellants rely on *United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 1384, 91 L.Ed. 1789 (1947), wherein the Court stated that it is improper to

> [put] on the owner the onus of determining the decisive moment in the process of acquisition by the United States when the fact of taking could no longer be in controversy.

The departure of the last of the Alders' neighbors in 1977–79, and the loss by the state in 1978 of rights that may have benefitted the Alders, are not the quality of continuing events that *Dickinson* contemplated in its holding that the cause does not accrue "until the situation becomes stabilized". *Id.* at 749, 67 S.Ct. at 1385. In *Dickinson* the water above the dam was continuing to rise. For the Alders, in July of 1973 they lost all grazing permits from the San Carlos Tribe, and were obliged to discontinue all ranching operations; they had no right to use the access road across tribal lands; and they conceded that their fee land had no market or mortgage value.

The situation had become stabilized. Although the Alders continued to own the fee lands, they described them as "landlocked" and "useless". The Alders do not argue that they were unaware that a taking had occurred, or that there was anything left to take. Under *Dickinson* and related authority, the cause of action for inverse condemnation had accrued by July, 1973. *See Barnes v. United States*, 538 F.2d 865, 873, 210 Ct.Cl. 467, 480 (1976) ("[T]he date of taking here is ... after it first became clearly apparent ... that the intermittent flooding was of a permanent nature."); *Pete v. United States*, 531 F.2d 1018, 1031, 209 Ct.Cl. 270, 292–93 (1976) ("Property is legally taken when the taking directly interferes with or substantially disturbs the owner's use and enjoyment of the property.").

■ In support of their argument that the cause did not accrue because they did not know until 1978 or 1979 that their remedy under Public Law 93–530 would be inadequate, appellants cite *Friedman v. United States*, 310 F.2d at 385, 159 Ct.Cl. at 8, for the proposition that where Congress has "deliberately given an administrative body the function of deciding all or part of the claimant's entitlement", the claim does not "ripen" until the official has acted or refused to act. However, the government has not asserted that the Alders' claim under Public Law 93–530 is time barred. It is only the Fifth Amendment claim that was not timely brought; and Congress made no such delegation to an administrative body with respect to the Fifth Amendment claim. The *Friedman* court said at 310 F.2d at 388, 159 Ct.Cl. at 11–12 [Footnote omitted]:

> Where, however, an administrative remedy is permissive (i.e., suit may be brought without exhausting the remedy), the court has usually held that the running of limitations is not deferred or tolled by such optional administrative consideration.

The enactment of Public Law 93–530 provided the Alders with an alternative, administrative remedy. The time consumed

in administering this law does not toll the statute of limitations governing actions under the Fifth Amendment.

Appellants argue that until enactment of Public Law 93–530 they had no remedy whatsever, because neither the United States nor the San Carlos Apache Indian Tribe had waived its sovereign immunity. Thus, they argue, the statute of limitations could not have started to run in 1969 or in 1973. Since their claim under Public Law 93–530 is not time barred, they ask us to conclude that their Fifth Amendment claim is also not time barred.

■ Appellants err in their premise that each taking claim under the Fifth Amendment requires a specific waiver of sovereign immunity. The Constitution had already achieved that popular right. *See, e.g., United States v. Testan,* 424 U.S. 392, 401, 96 S.Ct. 948, 954, 411 L.Ed.2d 114 (1976) ("These [just compensation] Fifth Amendment cases are tied to the language, purpose, and self-executing aspects of that constitutional provision...."); *Jacobs v. United States,* 290 U.S. at 16, 54 S.Ct. at 27 ("The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary.") The right remains subject, however, to the time limitation of 28 U.S.C. § 2501.

We have carefully considered all of appellants' arguments, and conclude that the Claims Court correctly held that the Fifth Amendment taking claim is time barred.

AFFIRMED.