**Edward BUNDRICK, Ruby Bundrick, and Yzobel Bundrick, Appellants,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 85–2316.**

United States Court of Appeals, Federal Circuit.

Feb. 28, 1986.

David L. Curl, Barassi & Curl, P.C., Tucson, Ariz., argued for appellants.

Laura Frossard, Dept. of Justice, Washington, D.C., argued for appellee. With her on brief, were F. Henry Habicht, II, Asst. Atty. Gen. and David C. Shilton.

Before DAVIS, Circuit Judge, MILLER, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Appellants Edward Bundrick, Ruby Bundrick, and Yzobel Bundrick (the Bundricks) appeal from the decision of the United States Claims Court dismissing their claim in inverse condemnation against the United States. This appeal was consolidated for argument with that of *Alder v. United States*, 785 F.2d 1004, also decided this day.

For details of the background of this case, reference is made to the findings and opinion of the Claims Court, 7 Cl.Ct. 532 (1985). Unlike the *Alder* case, the Claims Court decided only the Bundricks' Fifth Amendment issues, holding that all issues arising under Public Law 93–530, the San Carlos Mineral Strip-Purchase, 88 Stat. 1711 (1974), were *res judicata* in view of the dismissal with prejudice by the United States District Court for the District of Arizona of "all claims encompassed by the complaint other than the inverse condemnation claim".

The Bundricks' complaint before the district court contained a count to quiet title and a count in the nature of mandamus to the Secretary of the Interior—actions over which the Claims Court does not have jurisdiction, 28 U.S.C. § 1491(a)—and a Fifth Amendment taking count. The district court transferred the taking count to the Claims Court and dismissed the other claims with prejudice.

The government asserts that the dismissal, although silent on the merits of any claim, was an adjudication of all the dismissed claims on the merits under Rule 41(b) of the Federal Rules of Civil Procedure, and thus is *res judicata*.

The Bundricks argue that the Arizona district court had no subject matter jurisdiction over the Public Law 93–530 claim, and therefore that this claim can not be encompassed in the dismissal. The district court gave no reason for its dismissal with prejudice of "all [other] claims", but if the district court correctly determined that it had no jurisdiction over a Tucker Act Public Law 93–530 claim, its dismissal cannot be *res judicata* against this claim in its proper forum. And if the district court intended merely to dismiss the quiet title and mandamus actions, this dismissal cannot be *res judicata* against a different claim for money damages. Rule 41(b) of the Federal Rules of Civil Procedure is clear with respect to jurisdiction:

> ... a dismissal ... other than a dismissal for lack of jurisdiction ... operates as an adjudication upon the merits.

*See also International Philanthropic Hospital Foundation,* 621 F.2d 402, 404–05, 223 Ct.Cl. 587, 591–92 (1980) (dismissal for lack of subject matter jurisdiction not given *res judicata* effect where the district court did not have jurisdiction to decide the action's merits); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice,* ¶ 41.14 (2d ed. 1985).

Nor do we find support for the government's argument on "issue preclusion". The district court offered neither findings of fact nor conclusions of law on any of the issues in the complaint, nor any reasons for its sweeping dismissal. As was stated in a Court of Claims analysis of the effect of a stipulated dismissal with prejudice, by a federal district court, of a cause over which that court did not have subject matter jurisdiction:

> The intention of the court to make a determination on the merits may be important, but if the judgment is clearly not on the merits, the court's intention to make it a bar is immaterial. The words "with prejudice" add nothing to the effect of the judgment in such a case, no matter what light they throw on the intention of the court.

*International Philanthropic Hospital Foundation,* 621 F.2d at 405, 223 Ct.Cl. at 593 (quoting *Goddard v. Security Title Ins. & Guarantee Co.,* 14 Cal.2d 47, 92 P.2d 804, 808 (1939)). In that case the Court of Claims concluded that the words "with prejudice" merely precluded the parties from again bringing before that court a claim over which it had no jurisdiction. 621 F.2d at 405, 223 Ct.Cl. at 593.

In the case before us, there is inadequate basis in the record for concluding that the Arizona district court intended to have adjudicated the title and mandamus counts, and we have remarked on the absence of Rule 52(a) findings as required by Rule 41(b). The district court did not conduct a trial on, hear argument on, or decide the value of any of the Bundricks' property compensable by Public Law 93–530. The district court had before it a motion for summary judgment which it decided on the

pleadings, and thus it could not have adversely decided the contested factual questions of value. Nor did the district court state that it was reaching a summary judgment when, without comment on their merits, it dismissed "all [other] claims encompassed by the complaint".

■ The counts for declaratory and mandamus relief that were dismissed by the district court, whether denied on jurisdictional or other grounds, were not pursued before the Claims Court. We conclude that the Claims Court erred in holding that the entire "Public Law 93–530 ... aspect of the case" is *res judicata.* 7 Cl.Ct. at 539.

### A.  Public Law 93–530

Although appellants have intertwined the issues arising from Public Law 93–530 and those based on the Fifth Amendment, the Claims Court properly separated them. As discussed *supra,* the Claims Court erroneously denied judicial review to the Tucker Act claim under Public Law 93–530 that was properly before it, namely, the value of the fee land and improvements. In *Snowbank Enterprises, Inc. v. United States,* 6 Cl.Ct. 476 (1984), the Claims Court reviewed a property valuation by the Secretary of Agriculture in implementation of a similar remedial statute. In the *Alder* case the Claims Court stated that it assumed, without deciding, that it had jurisdiction to review the correctness of the property valuation. It did not do so in the Bundrick's case, in the belief that all Public Law 93–530 issues were *res judicata.*

The Bundricks assert that the valuation of their fee land was too low, although they accepted a revised appraisal for the value of improvements on their federal and state leased lands. They also assert that the trial was for liability only, and this error was compounded when the Claims Court held that the only issue properly before it was Fifth Amendment liability. Since the Claims Court held that the Bundricks' Fifth Amendment claims were time barred, as discussed *infra,* the court made no findings on issues of valuation. For the Public Law 93–530 claims, liability was not

at issue for either the fee lands or the improvements on the leased lands. The only issue requiring judicial attention was the amount of payment.

In the *Alder* decision we affirmed the Claims Court's holding that the valuation conditions set in Public Law 93–530 were not unreasonable, and that the Secretary reasonably executed the statute in valuing the improvements on the leased land, and the fee land, as of January 1969. *See Chevron USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694, *reh'g denied,* — U.S. —, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984).

■ The Claims Court did not discuss the Bundricks' alternative appraisals of the fair market value of either their fee land or the improvements on the leased land. The record shows that issues pertinent to the land value were the subject of evidence, argument, and briefs. We remand to the Claims Court for appropriate findings as to the reasonableness, or lack thereof, of the Secretary's administration of Public Law 93–530 as applied to the Bundricks.[1]

### B. The Fifth Amendment

Jurisdiction for claims in inverse condemnation arises under the Fifth Amendment of the Constitution. In accordance with 28 U.S.C. § 1491:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

As stated in *United States v. Testan,* 424 U.S. 392, 401, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), "[Just compensation] Fifth Amendment cases are tied to the language, purpose, and self-executing aspects of that constitutional provision", citing *Jacobs v. United States,* 290 U.S. 13, 16, 54 S.Ct. 26, 27, 78 L.Ed. 142 (1933). *See also United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983) ("If a claim falls within the terms of the Tucker Act [28 U.S.C. § 1491], the United States has presumptively consented to suit.")

In considering the Bundricks' claim under the Fifth Amendment for the taking of improvements on land they originally leased under the Taylor Grazing Act, 43 U.S.C. §§ 315–315g, 315h–315m, 315n and 315o–1, and after January 1969 leased from the San Carlos Apache Tribe, the Claims Court referred to established law that improvements run with the land, and remarked that the Bundricks had presented no reason why that law does not here apply, especially when it was not disputed that the Bundricks had no compensable interest in the leasehold. The Claims Court also held that any such claim accrued no later than July 1, 1973, the expiration of the final lease from the San Carlos Apache Tribe, and thus was time barred under 28 U.S.C. § 2501, the Arizona District Court action having been filed on October 16, 1981. *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271, 1 L.Ed.2d 306 (1957); *Kirby v. United States,* 201 Ct.Cl. 527, 539 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Parker v. United States,* 2 Cl.Ct. 399, 402 (1983).

With respect to the Bundricks' fee land within the San Carlos Mineral Strip, the Claims Court reasoned first that the taking occurred in January 1969, on the basis that access to the fee land was possible there-

---

1. The Claims Court stated, by footnote to its slip opinion, *Bundrick v. United States,* 7 Ct.Cl. 532, 541 (1985), that a claim by the Bundricks under Public Law 93–530 for the value of the improvements on the federal lands was time barred. We do not agree. It is uncontroverted that the United States refused to pay the Bundricks the improvement valuation unless the fee land value was settled. There is no basis in the statute or in law to hold that the Bundricks' were required to have tried to collect a portion of an undivided and, according to the government, indivisible claim.

after only by suffrance of the Indian authorities. When the grazing permits on the adjacent land, owned by the San Carlos Apache Tribe since 1969, were terminated by the Tribe as of July 1973, the Bundricks stated that "plaintiffs ceased their cattle operation and sold their cattle." The Claims Court held that the taking claim for the fee land was time barred under 28 U.S.C. § 2501.

 Appellants argue that this holding is incorrect, asserting that there was no time certain at which a taking could reasonably have accrued prior to the valuation of their property in 1977–78, when it first appeared to the Bundricks that they might not receive adequate compensation under Public Law 93–530. The Bundricks state that the mineral appraisal was not completed until 1981. They argue that their property rights were continuously affected, starting in 1969, worsening in 1973, and continuing through at least 1977–79 when their last neighbors left and their access to the leased state lands was lost on settlement of litigation between the State of Arizona and the United States. As discussed in *Alder*, the loss by the state in 1978 of rights that may have benefitted the Bundricks is not pertinent to when the federal taking claim accrued. Nor did negotiations in implementation of Public Law 93–530 toll the statute as applied to the Fifth Amendment claim. For the Bundricks, by July of 1973 they had lost all grazing leases from the San Carlos tribe; they had after January 1969 no right to use the access road across tribal lands; and they conceded that their "landlocked" fee land was not marketable or mortgageable. The situation had "become stabilized" by July of 1973, and under *United States v. Dickinson*, 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947), and related authority, the cause of action for inverse condemnation had accrued. We have carefully considered the arguments concerning easements over public lands, and estoppel, but are not persuaded that any legal theory negates the accrual of the taking claim.

We affirm the decision of the Claims Court that the Fifth Amendment taking claim is time barred, reverse the holding of *res judicata*, and remand for consideration of issues in connection with Public Law 93–530.

AFFIRMED–IN PART, REVERSED–IN–PART, AND REMANDED.